IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

CASE NO.: _____

SCOTTSDALE INSURANCE COMPANY

    Plaintiff,

v.

O'CONNOR'S ENTERPRISES LLC
d/b/a O'CONNOR'S IRISH PUB & GRILL
and ERICA BERGDAHL

    Defendants.

_____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Scottsdale Insurance Company ("Scottsdale"), hereby sues defendants, O'Connor's Enterprises LLC d/b/a O'Connor's Irish Pub & Grill ("O'Connor's") and Erica Bergdahl ("Bergdahl"), and seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for purposes of determining a question of actual controversy between the parties. Specifically, Scottsdale seeks a declaratory judgment that any liability to its insured, O'Connor's, for the lawsuit styled *Erica Bergdahl v. O'Connor's Enterprises LLC d/b/a O'Connor's Irish Pub & Grill, Allen James Martin*, Civil Action No. CC2019CV1722, pending in the Circuit Court for Montgomery County, Tennessee, 19th Judicial District (the "*Bergdahl* lawsuit"), is limited to $50,000, pursuant to the Assault and/or Battery Limited Liability Coverage Form (the "Assault & Battery Endorsement") in Scottsdale Policy No. CPS3013385 (the "Policy"). Scottsdale seeks a further declaration that it has no duty to indemnify

O'Connor's for the *Bergdahl* lawsuit under Scottsdale Policy No. XBS0088614 (the "Excess Policy"), pursuant to the Excess Policy's Insuring Agreement, Schedule of Controlling Underlying Insurance, and Assault and/or Battery Exclusion (the "Assault & Battery Exclusion").

**PARTIES**

1. Plaintiff Scottsdale is a corporation organized and existing under the laws of the state of Ohio with its principal place of business in Scottsdale, Arizona. Scottsdale therefore is a citizen of both Ohio and Arizona.

2. On information and belief, O'Connor's is a limited liability company organized and existing under the laws of the state of Tennessee with its principal place of business in Clarksville, Tennessee. On information and belief, O'Connor's has only two members—Greg Parbs and Chom Hanlon—both of whom are citizens of Tennessee. O'Connor's therefore is a citizen of Tennessee.

3. On information and belief, Defendant Bergdahl is a citizen of Tennessee.

**JURISDICTION AND VENUE**

4. The amount in controversy in this matter exceeds $75,000, exclusive of interest and costs.

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship between Plaintiff and Defendants and an amount in controversy exceeding $75,000, exclusive of interest and costs.

6. Venue is proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

**NATURE OF THE CLAIM**

7. This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purpose of construing and interpreting the terms of insurance contracts and for a determination of the rights and obligations, if any, of the parties arising from the insurance contracts issued by Scottsdale to O'Connor's.

8. An actual, immediate controversy exists among the parties regarding the extent of Scottsdale's duty to indemnify O'Connor's for the *Bergdahl* lawsuit under the Policy and the Excess Policy (collectively, the "Policies"). True and correct copies of the *Bergdahl* lawsuit, the Policy, and the Excess Policy are attached hereto as Exhibits "A," "B," and "C," respectively.

9. Scottsdale has agreed to defend O'Connor's with regard to the *Bergdahl* lawsuit, subject to a reservation of rights to deny or limit coverage pursuant to the Policies' terms. A copy of the letter to O'Connor's outlining Scottsdale's coverage position is attached hereto as Exhibit "D." Plaintiff now seeks a declaratory judgment that its duty to indemnify O'Connor's for the *Bergdahl* lawsuit is limited to $50,000, pursuant to the Policies' terms.

## THE *BERGDAHL* LAWSUIT

10. On August 20, 2019, Bergdahl filed the *Bergdahl* lawsuit against O'Connor's and Allen James Martin ("Martin") concerning an incident that took place at O'Connor's on August 24, 2018.

11. Bergdahl alleges that, on August 24, 2018, she was at O'Connor's to socialize with friends when Martin, who was allegedly intoxicated, verbally attacked her inside of the establishment.

12. Bergdahl alleges that Martin also physically attacked her outside of O'Connor's in the parking lot.

13. Bergdahl further alleges that Martin shot her with a handgun from O'Connor's parking lot after she got in her car and drove to the gas station across the street to wait for her friends, away from Martin.

14. Bergdahl alleges that employees of O'Connor's watched the assault take place but did not intervene or call the police.

15. Bergdahl alleges in Count I, titled "Negligence Tenn. Code Ann. § 57-10-102 (The Pub)," that O'Connor's breached its duty to keep Bergdahl safe from harm by serving alcohol to Martin, who was visibly intoxicated.

16. Bergdahl alleges in Count II, titled "Negligence Premises Liability (The Pub)," that O'Connor's owed a duty to Bergdahl to prevent the assault and breached that duty by failing to intervene, failing to call the police, and failing to provide security to patrons.

4

17. Bergdahl alleges in Count III, titled "Assault and Battery (Allen James Martin)," that Martin intentionally attacked and shot her, thereby causing unpermitted, harmful, and offensive bodily conduct that caused her injuries.

18. Bergdahl alleges in Count IV, titled "Intentional Infliction of Emotional Distress (Allen James Martin)," that Martin intentionally and recklessly attacked her, that such conduct was outrageous and not tolerated by civilized society, and that Bergdahl has suffered serious mental injuries as a result of Martin's actions.

19. Bergdahl alleges that Martin was charged with attempted first degree murder, reckless endangerment involving a deadly weapon, felony vandalism, and unlawful carrying of a deadly weapon.

20. Bergdahl alleges that her medical bills have amounted to more than $100,000 as of the filing of the *Bergdahl* lawsuit and seeks compensatory damages not less than $1,000,000 at trial. Bergdahl also seeks punitive damages.

21. Trial of the *Bergdahl* lawsuit has been set for February 16, 2021.

## THE SCOTTSDALE POLICIES

22. Scottsdale issued the Policy to O'Connor's for the policy period December 7, 2017 to December 7, 2018.

23. The Policy provides coverage for general liability and liquor liability, subject to the terms, conditions, limitations, exclusions, and endorsements contained within the Policy, including a $1,000,000 per-occurrence limit of liability and a $50,000 sublimit of liability pursuant to the Assault & Battery Endorsement.

24. Pursuant to the Insuring Agreement for "Coverage A – Bodily Injury and Property Damage Liability" in the Policy's Commercial General Liability Coverage Form, Scottsdale agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies . . . . This insurance applies to 'bodily injury' and 'property damage' only if . . . [it] is caused by an 'occurrence' . . . ."

25. The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person . . . ."

26. The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . or . . . [l]oss of use of tangible property that is not physically injured."

27. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

28. Pursuant to the Insuring Agreement in the Policy's Liquor Liability Coverage Form, Scottsdale agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage . . . . This insurance applies to 'injury' only if . . . [it] occurs during the policy period . . . ."

29. The Policy defines "injury" as "damages because of 'bodily injury' and 'property damage', including damages for care, loss of services or loss of support."

6
PD.30039444.1
Case 3:21-cv-00368   Document 1   Filed 05/06/21   Page 6 of 13 PageID #: 6

30. The Policy also contains the Assault & Battery Endorsement, which expressly states that it modifies the insurance provided under the Commercial General Liability Coverage and Liquor Liability Coverage Parts described in Paragraphs 22-29 above.

31. The Policy's Assault & Battery Endorsement provides, in relevant part, as follows:

> Except as provided by this coverage form, this policy does not apply to:
>
>         \*        \*        \*
>
> **3.** "Injury," "bodily injury," "property damage," "error or omission" or "personal and advertising injury" arising from:
>
>     **a.** Assault and/or Battery committed by:
>
>         **(1)** Any insured;
>
>         **(2)** Any employee/"employee" of any insured; or
>
>         **(3)** Any other person; or
>
>     **b.** The failure to suppress or prevent Assault and/or Battery by any person in **a.** above; or
>
>     **c.** The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery; or
>
>     **d.** The negligent:
>
>         **(1)** Employment;
>
>         **(2)** Investigation;
>
>         **(3)** Supervision;
>
>         **(4)** Reporting to the proper authorities, or failure to so report; or
>
>         **(5)** Retention;
>
> of a person for whom any insured is or ever was legally responsible and whose conduct

> would be excluded by paragraphs **a.** and **b.** above.

> We will have no duty to defend any suit/"suit" against you seeking damages/"damages" on account of any such injury unless coverage is provided by this Coverage Form.

> The coverage provided is described below:

> **INSURING AGREEMENTS**

> For the premium shown below, we agree to afford coverage with respect to **Assault and/or Battery Liability** only as indicated on this Coverage Form and subject to the provisions as set forth in this Coverage Form at liability limits of . . . $50,000 Each Event [and] $100,000 Aggregate.

32. The Policy's Assault & Battery Endorsement is subject to an exclusion for "[a]ny claim for punitive or exemplary damages."

33. The Policy also contains a Punitive or Exemplary Damage Exclusion, which states that the Policy "does not apply to a claim of or indemnification for punitive or exemplary damages" and that Scottsdale "will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages."

34. Scottsdale issued the Excess Policy to O'Connor's for the policy period December 7, 2017 to December 7, 2018.

35. The Excess Policy provides up to $2,000,000 of liability coverage, but only in excess of the coverages and limits specified in the Excess Policy's Schedule of Controlling Underlying Insurance.

36. The Excess Policy's Schedule of Controlling Underlying Insurance lists The Policy's general liability coverage limit of $1,000,000 and liquor liability coverage

limit of $1,000,000.  It does not list the Policy's $50,000 sublimit under the Assault & Battery Endorsement.

37. Pursuant to the Insuring Agreement in the Excess Policy's Commercial Excess Liability Coverage Form, Scottsdale agrees to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'injury or damage' to which insurance provided under this Coverage Part applies."

38. The Excess Policy defines "injury or damage" as "any injury or damage, covered in the applicable 'controlling underlying insurance' . . . ."

39. The Excess Policy defines "retained limit" as "the available limits of 'controlling underlying insurance' applicable to the claim."

40. The Excess Policy defines "controlling underlying insurance" as "any policy of insurance . . . listed in the Declarations under the Schedule of 'controlling underlying insurance'."

41. The Excess Policy's Insuring Agreement further provides that "[t]his insurance applies to 'injury or damage' that is subject to an applicable 'retained limit'. If any other limit, such as, a sublimit, is specified in the 'controlling underlying insurance', this insurance does not apply to 'injury or damage' arising out of that exposure unless that limit is specified in the Declarations under the Schedule of 'controlling underlying insurance'."

42. The Excess Policy contains an Underlying Sublimit Coverage Exclusion Endorsement, which excludes coverage for "[a]n 'event' covered in the 'controlling underlying insurance' unless the 'controlling underlying insurance' limit for 'injury or

9

PD.30039444.1

Case 3:21-cv-00368   Document 1   Filed 05/06/21   Page 9 of 13 PageID #: 9

damage' is at least equal to the Applicable Limits as shown on the Schedule Of Controlling Underlying Insurance."

43. The Excess Policy contains an Assault & Battery Exclusion, which states that the Excess Policy does not apply to the following:

> "Injury or damage" arising from:
> 1. Assault and/or Battery committed by any insured, any employee of any insured, or any other person;
> 2. The failure to suppress or prevent Assault and/or Battery by any person in **1.** above; or
> 3. The negligent:
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities, or failure to so report; or
>    e. Retention
>
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs **1.** or **2.** above.

44. The Excess Policy contains a Punitive or Exemplary Damage Exclusion, which states that the Excess Policy "does not apply to a claim of or indemnification for punitive or exemplary damages" and that Scottsdale "will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages."

45. Scottsdale is currently defending O'Connor's under a full reservation of Scottsdale's rights under the Policies, including the right to deny coverage for the *Bergdahl* lawsuit.

## JUSTICIABILITY

46. On July 23, 2019, Scottsdale made an offer of the available limit under the Policies, in the amount of $50,000, to Bergdahl as full and final settlement of any and all claims related to the *Bergdahl* lawsuit.

47. Bergdahl has rejected Scottsdale's offer of settlement for the Policies' applicable limit of $50,000.

48. Bergdahl disputes that the Policies' applicable limit of liability for her claims against O'Connor's is $50,000.

49. There is an actual, existing, justiciable controversy as to whether Scottsdale owes any indemnity obligation under the Policies in excess of $50,000 for the claims asserted in the *Bergdahl* lawsuit against O'Connor's.

## COUNT I – DECLARATORY RELIEF – LIMITED DUTY TO INDEMNIFY UNDER THE POLICY

50. Scottsdale adopts and incorporates by reference the allegations set forth in Paragraphs 1-49 above.

51. Bergdahl's injuries allegedly arose from an assault and/or battery committed by Martin, and from O'Connor's' acts or omissions of the type or types described in paragraphs 3(a)(3), 3(b), 3(c), and 3(d)(4) of the Policy's Assault & Battery Endorsement and paragraphs 1, 2, and 3(d) of the Excess Policy's Assault & Battery Exclusion.

52. The Policy's Assault & Battery Endorsement limits coverage for the *Bergdahl* lawsuit to $50,000, and therefore any amount owed as indemnification to Scottsdale's insured, O'Connor's, for the *Bergdahl* lawsuit is limited to $50,000.

53. Both the Policy and the Assault & Battery Endorsement exclude coverage for punitive damages, and therefore any punitive damages sought in the *Bergdahl* lawsuit are not covered.

## COUNT II – DECLARATORY RELIEF – NO DUTY TO INDEMNIFY UNDER THE EXCESS POLICY

54. Scottsdale adopts and incorporates by reference the allegations set forth in Paragraphs 1-53 above.

55. The Excess Policy applies only to coverages and limits described in the Excess Policy's Schedule of Controlling Underlying Insurance, which does not include the $50,000 sublimit under the Policy's Assault & Battery Endorsement, and therefore Scottsdale has no duty to indemnify under the Excess Policy for the *Bergdahl* lawsuit.

56. The Excess Policy excludes coverage under the Underlying Sublimit Coverage Exclusion Endorsement, and therefore Scottsdale has no duty to indemnify under the Excess Policy for the *Bergdahl* lawsuit.

57. The Excess Policy excludes coverage under the Assault & Battery Exclusion, and therefore Scottsdale has no duty to indemnify under the Excess Policy for the *Bergdahl* lawsuit.

58. The Excess Policy excludes coverage for punitive damages, and therefore any punitive damages sought in the *Bergdahl* lawsuit are not covered.

WHEREFORE, Scottsdale respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the Policies, including, but not limited to, the following:

(a) that the insurance coverage afforded for the *Bergdahl* lawsuit under the Policy is limited to $50,000, pursuant to the Assault & Battery Endorsement;

(b) that the insurance coverage afforded for the *Bergdahl* lawsuit under the Policy excludes coverage for punitive damages; and

(c) that there is no coverage for the *Bergdahl* lawsuit under the Excess Policy.

Scottsdale also prays that this Court provide such further and supplemental relief as it deems necessary and proper, including but not limited to, an award of costs in favor of Scottsdale.

                Respectfully submitted,

                RAINEY, KIZER, REVIERE & BELL, P.L.C.

                By: /s/ Bradford D. Box
                    BRADFORD D. BOX (BPR No. 16596)
                    *Attorney for Scottsdale Insurance Company*
                    209 East Main Street
                    P.O. Box 1147
                    Jackson, Tennessee 38302-1147
                    (731) 423-2414–telephone
                    (731) 426-8150–facsimile
                    bbox@raineykizer.com